IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MANDI SWAN on behalf of herself and her son I.O., DENISE BURNS on behalf of herself and her daughter, V.B., FELICIA BRADLEY on behalf of herself and her son, C.B., on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) | |
| v. | ) ) | 13 C 3623 |
| BOARD OF EDUCATION OF THE CITY OF CHICAGO, and BARBARA BYRD-BENNETT, Chief Executive Officer, | ) ) ) ) | Judge John Z. Lee |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Mandi Swan, Denise Burns, and Felicia Bradley (collectively "Plaintiffs") are parents whose children are enrolled in special education programs in Chicago public schools that are slated to close before the commencement of the 2013-2014 school year. They have sued the Board of Education of the City of Chicago ("Board") and Barbara Byrd-Bennett, the Chief Executive Officer of the Chicago Public Schools ("CPS") (collectively "Defendants"), alleging two violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132. First, Plaintiffs allege that closing the schools as scheduled will disproportionately harm children in special education programs because the closures will not allow enough time for students to socialize and acclimate to their new schools or for administrators to ensure that the students' Individualized Educational Programs ("IEPs") are adequately implemented at the new schools. Second, Plaintiffs allege that the scheduled closings fail to reasonably accommodate students with disabilities. Plaintiffs seek an injunction preventing the schools from closing for at least one year.

1

Defendants move to dismiss Plaintiffs' claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that Plaintiffs lack standing to bring their claims because they have not alleged that they have suffered an injury in fact. Defendants also contend that Plaintiffs have failed to state claims of either disparate impact discrimination or failure to reasonably accommodate under the ADA. For the reasons stated herein, Defendants' motion is denied.

## **Background**

The following facts are taken from Plaintiffs' Complaint and are accepted as true for purposes of resolving this motion to dismiss. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010).

On March 23, 2013, CPS CEO Byrd-Bennett proposed to close 53 CPS elementary schools before the commencement of the 2013-2014 school year, including the elementary schools that Plaintiffs' children attend. (Compl. ¶¶ 28, 32, 34, 36.) On May 22, 2013, the Board met to approve the closings. (*Id.* ¶ 30.)

Plaintiffs allege that the time between the Board's approval of the closings and the commencement of the 2013-2014 school year make it extremely unlikely, if not impossible, to ensure that the IEPs of students in special education programs will be adequately revised and implemented at their receiving schools. (*Id.* ¶¶ 64-66, 97.) According to Plaintiffs, this is because there simply is not enough time to schedule or conduct the meetings with parents and administrators that are necessary to revise the IEPs of each individual student impacted by the school closures. (*Id.*)

Additionally, Plaintiffs assert that Defendants have not issued specific transition plans that identify and commit support services for children in special education programs at each receiving school and that Defendants have failed to create specific safety plans for children who

will be required to walk through new and unfamiliar neighborhoods in dangerous areas of the city. (*Id.* ¶¶ 74-75, 77-78.) Plaintiffs also contend that the current schedule makes it impossible for special education teachers and clinicians to conduct a transition that will avoid both academic and emotional setbacks for students in special education programs. (*Id.* ¶ 100.)

## Discussion

Defendants have moved to dismiss pursuant to Rules 12(b)(1) and 12(b)(6). The purpose of a motion to dismiss under either Rule 12(b)(1) or 12(b)(6) is to test the sufficiency of the complaint. *Christensen v. Cnty. of Boone*, 483 F.3d 454, 457 (7th Cir. 2007); *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). Rule 12(b)(1) requires dismissal of claims over which the federal court lacks the "statutory or constitutional power to adjudicate the case" (referred to as subject matter jurisdiction). *United States v. Lawrence*, 535 F.3d 631, 636 (7th Cir. 2008). Rule 12(b)(6) requires dismissal of complaints that fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Defendants move to dismiss Plaintiffs' claims pursuant to both rules. The Court addresses each in turn.

I. **Rule 12(b)(1) Subject Matter Jurisdiction**

Article III, section 2 of the United States Constitution "limits the 'judicial power' to the resolution of 'cases' and 'controversies.'" *Valley Forge Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982). A necessary element of Article III's case-or-controversy requirement is "that a litigant have 'standing' to challenge the action sought to be adjudicated in the lawsuit." *Id.* "[T]he irreducible constitutional minimum of standing contains three elements." *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 422 F.3d 490, 495 (7th Cir. 2005) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). A party must have personally suffered an injury in fact, which is fairly traceable to the defendant's challenged conduct, and which is likely to be redressed by a favorable decision.

*Lujan*, 504 U.S. at 560-61. The party invoking federal jurisdiction bears the burden of establishing each of these elements. *Id.* at 561.

Here, Defendants launch a facial attack on jurisdiction and argue that Plaintiffs lack standing because (1) they have not alleged that they have suffered an injury in fact, and (2) their claims are unripe. Neither argument is persuasive.

As the Seventh Circuit has noted, "the Article III standing requirements are rather undemanding." *Family & Children's Ctr., Inc. v. Sch. City of Mishawka*, 13 F.3d 1052, 1058 (7th Cir. 1994). The first prong requires that an injury be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. "The magnitude, as distinct from the directness, of the injury is not critical to the concerns that underlie the requirement of standing." *Am. Bottom Conservatory v. U.S. Army Corps of Eng'rs*, 650 F.3d 652, 658 (7th Cir. 2011). Indeed, the injury in fact necessary for standing "need not be large, an identifiable trifle will suffice." *Sierra Club v. Franklin Cnty. Power*, 546 F.3d 918, 925 (7th Cir. 2008) (internal quotations omitted). Additionally, at the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [the Court] 'presum[es] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan*, 504 U.S. at 561 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)).

Plaintiffs have satisfied this low burden. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Here, Plaintiffs, on behalf of their children who are enrolled in special education programs, allege that the school closing schedule

does not allow enough time to revise their children's IEPs and ensure that the IEPs will be properly implemented at their new schools. (Compl. ¶¶ 64-66, 97.) Plaintiffs also allege that Defendants have not issued specific transition plans that commit the necessary support services for children in special education programs, making it impossible for special education teachers and clinicians to conduct a transition that will avoid both academic and emotional setbacks for students in special education programs. (*Id.* ¶¶ 74-75, 77-78.) Finally, Plaintiffs allege that Defendants have not put in place specific safety plans for children in special education programs, even though the children will be required to walk through unfamiliar and dangerous neighborhoods as a result of the school closings. (*Id.* ¶¶ 75, 77-78, 100.) According to Plaintiffs, as a result, their children will be disproportionately harmed by the school closings as compared to general education children who do not need IEPs or special support services. (*Id.* ¶¶ 48, 82, 101.) At the motion to dismiss stage, this alleged harm satisfies Article III's injury in fact requirement.

Nevertheless, Defendants counter that Plaintiffs' claims of injury are too speculative. They argue that Plaintiffs' assertions of injury are based upon sheer speculation and fears about the future and not specific articulable conditions. But an injury in fact need not be certain; it is enough "so long as there is some nonnegligible, nontheorectical probability of harm that [Plaintiffs'] suit if successful would redress." *See MainStreet Org. of Realtors v. Calumet City, Ill.*, 505 F.3d 742, 744 (7th Cir. 2007); *North Shore Gas Co. v. EPA*, 930 F.2d 1239, 1242 (7th Cir. 1991) ("[A] probabilistic benefit from winning a suit is enough 'injury-in-fact' . . . to confer standing in the undemanding Article III sense.") (internal citations omitted). What is more, "a case is not dismissed for failure to invoke federal jurisdiction just because the plaintiff fails to

5

prove injury. Ordinarily . . . the allegation is enough." *MainStreet*, 505 F.3d at 745. Thus, Plaintiffs' allegations are sufficient to confer Article III standing at this preliminary stage.

Defendants also argue that Plaintiffs' claims are not ripe for adjudication because Plaintiffs have not availed themselves of the administrative remedies available under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.* The IDEA requires participating States, including Illinois, to provide "all children with disabilities . . . [with] a free appropriate public education." § 1400(d)(1)(A); *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 51 (2005). The IDEA contains detailed procedural safeguards that provide parents of children with disabilities "an opportunity to present complaints with respect to any matter relating to the . . . provision of a free appropriate public education to such child," including the adequacy of an IEP. *See* 20 U.S.C. § 1415; *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 486 (7th Cir. 2012) ("Once an IEP is in place, the school must provide the services listed in it, and the IDEA sets out many rules governing the process of amending an IEP.") Under these procedures, before bringing a case in federal court, a parent must exhaust the IDEA's administrative remedies. 20 U.S.C. § 1415(*l*); *Charlie F. v. Bd. of Educ. of Skokie Sch. Dist.*, 98 F.3d 989, 991 (7th Cir. 1991).

Additionally, under what has been characterized as an "unusual provision" in the IDEA, "any pupil who wants 'relief that is available' under the IDEA must use the IDEA's administrative system, even if he invokes a different statute."[1] *Charlie F.*, 98 F.3d at 991 (requiring plaintiffs to exhaust the IDEA's administrative remedies even though they brought

---

[1] The IDEA's "unusual provision" reads: "Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 *et seq.*], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter." 20 U.S.C. § 1415(*l*).

claims under only the ADA, the Rehabilitation Act, 29 U.S.C. § 794, and the Constitution of the United States (through 42 U.S.C. § 1983)). Furthermore, "[t]he [IDEA] speaks of available relief, and what relief is 'available' does not necessarily depend on what the aggrieved party wants." *Id.* at 991. Instead, courts must look to the "theory behind the grievance" to see if the IDEA's process is triggered. *Id.* at 991-92 ("The nature of the claim and the governing law determine the relief no matter what the plaintiff demands.") Indeed, "[b]y making an unreasonable or unattainable demand parents cannot opt out of the IDEA." *Id.* Thus, if the IDEA can provide Plaintiffs relief, they must exhaust the IDEA's administrative process before coming to federal court, even though they bring claims under only the ADA.

According to Defendants, Plaintiffs' claims must be dismissed because they have not pursued the administrative remedies under the IDEA. Plaintiffs respond that exhaustion is not necessary here. The Court, however, need not decide this issue for the purposes of this motion because failure to exhaust under the IDEA is not a matter of jurisdiction, but an affirmative defense that cannot form the basis of a motion to dismiss under Rule 12(b)(1). *Mosely v. Bd. of Educ. of City of Chi.*, 434 F.3d 527, 533 (7th Cir. 2006) ("A failure to exhaust is normally considered to be an affirmative defense . . . and we see no reason to treat it differently here [under the IDEA]") (internal citations omitted).[2] As such, a failure-to-exhaust argument is one that the Court normally considers, at the earliest, after an answer has been filed, not at the motion

---

[2] Other circuits are split on whether IDEA exhaustion is jurisdictional. *Compare Polera v. Bd. of Educ. of the Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 483 (2d Cir. 2002) ("A plaintiff's failure to exhaust administrative remedies under the IDEA deprives a court of subject matter jurisdiction."), *and MM v. Sch. Dist. of Greenville Cnty.*, 303 F.3d 523, 536 (4th Cir. 2002) ("The failure of the [plaintiffs] to exhaust their administrative remedies for [certain IDEA-related claims] deprives us of subject matter jurisdiction over those claims"), *with Payne v. Peninsula Sch. Dist.*, 653 F.3d 863, 867 (9th Cir. 2011) (holding that "the IDEA's exhaustion requirement is a claims processing provision that IDEA defendants may offer as an affirmative defense").

to dismiss stage. *See id.* Thus, Defendants' second argument also fails, and the motion to dismiss pursuant to Rule 12(b)(1) is denied.

**II.      Stating a Claim under Rule 12(b)(6)**

Defendants also argue that under Rule 12(b)(6), Plaintiffs have failed to state claims of either disparate impact discrimination or failure to reasonably accommodate under the ADA. To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rule 8 does not require "detailed factual allegations," but it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). A complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. Here, Plaintiffs have satisfied Rule 8.

A Title II ADA claim can be based on one of three theories: (1) intentional discrimination on the basis of a disability, (2) disproportionate impact on disabled people, or (3) a refusal to reasonably accommodate disabled people. *See Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 753 (7th Cir. 2006) (en banc). Plaintiffs bring claims under the second and third theories – disparate impact and failure to accommodate.

Disparate impact claims are cognizable under the ADA. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003). Disparate impact discrimination occurs when an entity adopts a policy or practice that is "facially neutral in [its] treatment of different groups but that in fact fall[s] more harshly on one group than another and cannot be justified by [a nondiscriminatory] necessity." *Id.* Here, Plaintiffs have alleged that Defendants' policy of closing the schools as scheduled will

cause disproportionate harm to their children because the closings will deprive them of adequate IEPs and other services that only special education students receive. (Compl. ¶¶ 67-75, 77-78, 116.) This satisfies the liberal pleading standard of Rule 8.

Plaintiffs also allege that carrying out the school closings within a short period of time fails to reasonably accommodate their children. Failure to make a reasonable accommodation is an independent basis for a Title II ADA claim. *Wisc. Comm'n Servs., Inc.*, 465 F.3d at 753 ("Plaintiffs need not allege either disparate treatment of disparate impact in order to state a reasonable accommodation claim under Title II of the ADA."); *Washington v. Ind. High Sch. Athl. Ass'n, Inc.*, 181 F.3d 840, 848 (7th Cir. 1999). Plaintiffs' allegations that Defendants have failed to ensure that the children's IEPs will be satisfactorily implemented in the new schools and that the children will suffer disproportionate academic and emotional setbacks also satisfies Rule 8 with respect to Plaintiffs' reasonable accommodation claim.

## Conclusion

For the reasons provided above, the Court denies Defendants' motion to dismiss [29].

**SO ORDERED**                      **ENTER: 7/25/13**

                                               _____
                                               **JOHN Z. LEE**
                                               **U.S. District Judge**